UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JOHN JOSEPH FARLEY, JR., | Case No.: C 11-01994-LHK |
| Plaintiff, | ORDER GRANTING MOTION TO DISMISS AND DENYING MOTION FOR ORDERS TO STOP HARASSMENT |
| v. | |
| SANTA CLARA COUNTY DEPARTMENT OF CHILD SUPPORT SERIVCES, | |
| Defendant. | |

On April 22, 2011, Plaintiff John Farley, proceeding *pro se*, filed a complaint alleging constitutional, federal and state law claims against Defendant Santa Clara County Department of Child Support Services ("DCSS") for enforcing a New York Family Court order requiring him to pay child support. Plaintiff also has moved for orders to stop harassment based on allegations similar to those set forth in the complaint. Defendant now moves to dismiss. Because the Court deems the motions appropriate for decision without hearing, the oral argument and case management conference scheduled for October 13, 2011 are VACATED.

For the reasons below, the Court GRANTS the motion to dismiss Plaintiff's claims that the suspension of his driver's license violates the fundamental right to travel and for intentional infliction of emotional distress WITH LEAVE TO AMEND. All other claims are dismissed WITHOUT LEAVE TO AMEND. The Court also DENIES Plaintiff's motion for orders to stop harassment.

1
Case No.: C 11-01994-LHK
ORDER GRANTING MOTION TO DISMISS AND DENYING MOTION FOR ORDERS TO STOP HARASSMENT

## I. BACKGROUND

According to the complaint, in November 1991, Plaintiff learned from an estranged girlfriend that he was the father of a baby girl. ECF No. 1 (Complaint) ¶ 3a; ¶ 3l. In 1994, the "Manhattan Family Court" ordered Plaintiff, then a resident of New York State, to pay child support. *Id*. ¶ 3b. Around the same time, the girl's mother obtained an "Order of Protection" against Plaintiff. *Id*. ¶ 3n. She also had him arrested "many times" for "follow[ing] the court ordered visitation….requiring him to appear at [the girl's mother's] home on specific days at specific times." *Id.*

In or about 1996, Plaintiff's child support case was transferred to the Family Court of the State of New York, Suffolk County ("Suffolk Court"). *Id*. ¶ 3c. Over Plaintiff's objections, the Suffolk Court allegedly inflated the imputed income used to calculate his child support payments without consulting Plaintiff's financial records. *Id*. ¶ 3s; 3u. In or about 1999, the Suffolk Court jailed Plaintiff for 24 hours for willful contempt of an order to pay child support. *Id*. ¶ 3w. Plaintiff was released after producing proof of employment and partial back payment of child support. *Id*. ¶ 3x. Since 1999, the girl's mother has refused to allow Plaintiff to contact or visit his daughter, in violation of a "court ordered visitation schedule." *Id. ¶* 3z.

In October 2009, the Santa Clara County Superior Court issued Plaintiff a Notice of Registration of Out-of-State Support Order. *See* Defendant's Request for Judicial Notice ("RJN"), Ex. B.[1] In or about 2010, a DCSS employee named "Melissa A. Popps" began sending Plaintiff regular notices requesting payment of child support. Complaint ¶ 3d. In addition, DCSS allegedly took action to suspend Plaintiff's driver's license and revoke his passport.[2] *Id*. at ¶ 3kk.

---

[1] The Court takes judicial notice of the records of the Suffolk and Santa Clara County courts. *See City of Sausalito v. O'Neill*, 386 F.3d 1186, 1223 (9th Cir. 2004) (The Court "may take judicial notice of a record of a state agency not subject to reasonable dispute.").

[2] DCSS is responsible for establishing, modifying and enforcing child support activities and obligations in Santa Clara County. *See* Cal. Fam. Code § 1406(a). If a parent fails to meet his or her child support obligations, DCSS is required to submit the parent's name to the DMV, which must withhold issuance or renewal of the parent's driver's license. Cal. Fam. Code § 17520. DCSS also reports the parent to the State Department, which may revoke or refuse to issue a passport in the parent's name. *See* 42 U.S.C. §652(k). In addition, the Superior Court may enforce

2
Case No.: C 11-01994-LHK
ORDER GRANTING MOTION TO DISMISS AND DENYING MOTION FOR ORDERS TO STOP HARASSMENT

1    Plaintiff filed the instant action on April 22, 2011.  He claimed that DCSS's conduct

2 violated provisions of the U.S. Constitution prohibiting involuntary servitude and guaranteeing the

3 right to travel.  He also appears to allege intentional infliction of emotional distress, as well as

4 violations of criminal statutes prohibiting the imposition of a condition of peonage, *see* 18 U.S.C. §

5 1581, sale into involuntary servitude, *see* 18 U.S.C. § 1584, and conspiracies to violate civil rights.

6 *See* 18 U.S.C. § 241.  Plaintiff seeks compensatory and punitive damages, as well as an injunction

7 releasing his travel documents and removing debt obligations from his record.

## II.  LEGAL STANDARD

Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a "cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir.2008).  For purposes of a motion to dismiss, the plaintiff's allegations are taken as true, and the court must construe the complaint in the light most favorable to the plaintiff. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007)).  Thus, a court need not accept as true conclusory allegations, unreasonable inferences, legal characterizations, or unwarranted deductions of fact contained in the complaint. *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-755 (9th Cir.1994).

Civil rights complaints brought by *pro se* plaintiffs are held to a less stringent standard than pleadings drafted by attorneys. *Maurer v. Individually & as Members of Los Angeles County Sheriff's Dept.*, 691 F.2d 434, 437 (9th Cir. 1982) (internal citations omitted).  *Pro se* plaintiffs

---

child support obligations by imposing a fine or jail sentence. *See, e.g.*, *Moss v. Superior Court (Ortiz)*, 17 Cal. 4th 396 (Cal. 1998).

3

Case No.: C 11-01994-LHK
ORDER GRANTING MOTION TO DISMISS AND DENYING MOTION FOR ORDERS TO STOP HARASSMENT

should be given "an opportunity to amend their complaints to overcome any deficiency unless it clearly appears ... that the deficiency cannot be overcome by amendment.'" *Id.* Where amendment would be futile, however, dismissal may be ordered with prejudice. *Dumas v. Kipp*, 90 F.3d 386, 393 (9th Cir. 1996).

## III. DISCUSSION

### A.  Plaintiff Fails to State a Claim Under Section 1983[3]

Title 42 U.S.C. § 1983 provides a cause of action for the deprivation of "rights, privileges, or immunities secured by the Constitution or laws of the United States" by any person acting "under color of any statute, ordinance, regulation, custom, or usage." *Gomez v. Toledo*, 446 U.S. 635, 638 (1980). Section 1983 is not itself a source of substantive rights, but rather a method for vindicating federal rights elsewhere conferred. *See Graham v. Connor*, 490 U.S. 386, 393–94 (1989). To state a claim under Section 1983, a plaintiff must allege (1) the violation of a right secured by the Constitution or laws of the United States, and (2) that the violation was committed by a person acting under color of law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

In order to sue a municipal agency under Section 1983, a plaintiff must show that the alleged injury was inflicted through the execution or implementation of the entity's "official policy." *Monell v. Dep't of Soc. Services of City of New York*, 436 U.S. 658, 694 (1978). "Official policy" may include a "longstanding practice or custom which constitutes the 'standard operating procedure' of the local government entity." *Ulrich v. City & County of San Francisco*, 308 F.3d 968, 984 (9th Cir. 2002) (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)). Alternatively, the plaintiff may show that the "decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official

---

[3]  Plaintiff does not specifically assert his constitutional claims under Section 1983. However, Plaintiff cites no cases implying a cause of action under the Thirteenth Amendment or the right to travel, and the Court knows of none. *See, e.g.*, *Jane Doe I v. Reddy*, C 02-05570 WHA, 2003 WL 23893010 (N.D. Cal. Aug. 4, 2003) (finding no implied cause of action under the Thirteenth Amendment). The Court will therefore construe Plaintiff's allegations as Section 1983 claims.

4
Case No.: C 11-01994-LHK
ORDER GRANTING MOTION TO DISMISS AND DENYING MOTION FOR ORDERS TO STOP HARASSMENT

policy in the area of decision" or that "an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate." *Id.* (internal citations omitted).

    **1.**    **The Scope of Plaintiff's Claims is Significantly Narrowed by the Requirements of *Monell* and the Statute of Limitations**

        **a.**    **Plaintiff's Allegations Regarding Defendant's Implementation of State and Federal Law are Sufficient to State a Claim for Municipal Liability**

Defendant first contends that because the complaint does not allege "that the County's policies were the moving force behind any constitutional violations," Plaintiff has failed to state a claim for municipal liability under *Monell*. ECF No. 8 (Motion to Dismiss) at 8. It is true that Plaintiff does not assert that Defendant's conduct was the result of a "standard operating procedure" or that "Melissa A. Popps" is a "final policymaking authority." *Ulrich*, 308 F.3d at 984. Thus, to the extent that Plaintiff's claims are based on actions taken by Ms. Popps or other DCSS employees outside the scope of their official duties, Defendant may not be held liable under Section 1983.

On the other hand, Defendant repeatedly emphasizes that it was legally required to enforce the Suffolk Court judgment, and that any action taken to revoke Plaintiff's driver's license and passport was authorized by state and federal law. *See, e.g.*, ECF No. 19 (Motion to Dismiss) at 6. Defendant's concessions imply that it is County policy to comply with its statutory obligations. *Compare Strickler v. Waters*, 989 F.2d 1375, 1390 (4th Cir. 1993) ("The City of Portsmouth is not liable under section 1983 for the actions of its Sheriff in the administration of its jail, because under the law of Virginia those actions do not embody an official policy of the City of Portsmouth."). Insofar as Plaintiff is simply challenging the constitutionality of the statutory child support enforcement regime, his allegations, combined with Defendant's statements, are sufficient to state a claim for municipal liability.

        **b.**    **Plaintiff's Claims Regarding Defendant's Enforcement Activities Since April 22, 2009 are not Time-Barred**

5

Case No.: C 11-01994-LHK
ORDER GRANTING MOTION TO DISMISS AND DENYING MOTION FOR ORDERS TO STOP HARASSMENT

A Section 1983 claim must be filed within the state statute of limitations for personal injury actions. *Wilson v. Garcia*, 471 U.S. 261 (1985). In California, personal injury actions accruing after 2002 are governed by a two-year limitations period. *See* Cal. Code Civ. P. § 335.1; *Krupnick v. Duke Energy Morro Bay, L.L.C.*, 115 Cal. App. 4th 1026, 1028 (Cal. Ct. App. 2004).[4] A claim accrues when the plaintiff knows, or should know, of the injury which is the basis of the cause of action. *Fink v. Shedler*, 192 F.3d 911, 914 (9th Cir. 1999); *see also Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*, 522 F.3d 1049, 1054 (9th Cir.2008) (a claim under California law accrues when "the plaintiff either discovers or has reason to discover the existence of [the] claim") (internal citations omitted).

Defendant argues that because Plaintiff's claims are based on a child support award imposed by the Suffolk Court "in or about 1996," this action is time-barred. Motion to Dismiss at 3. While the Suffolk Court judgment clearly forms the basis for Plaintiff's obligations, the complaint states that "circa 2010," Defendant attempted to "harass, intimidate, manipulate, coerce or compel…[Plaintiff] to pay an imposed debt" and "conspired" with the DMV and State Department to deprive Plaintiff of protected rights. ECF No. 1 (Complaint) at 5. As the complaint was filed on April 22, 2011, such *enforcement-related* conduct may fall within the limitations period.[5]

However, although Plaintiff claims that the Suffolk Court inflated his imputed income in calculating his child support obligations, this Court cannot overturn a fifteen-year old judgment from another jurisdiction. Plaintiff's claims that are based on the Suffolk Court's *imposition or calculation* of child support obligations are thus barred by the statute of limitations.

---

[4] A claim for intentional infliction of emotional distress must be filed within the one-year statute of limitations for intentional torts. *Magpali v. Farmers Group, Inc.*, 47 Cal. App. 4th 1024 (Cal. Ct. App. 1996). The Court discusses Plaintiff's claim for emotional distress in the following section of this order.

[5] Neither party has offered evidence of the date on which Defendant began corresponding with Plaintiff or took action to revoke his travel documents. If Plaintiff chooses to file an amended complaint, the Court requests that he specify the date(s) on which he asserts Defendant took adverse action against him. Defendant may also submit judicially noticeable evidence of such date(s) if it moves to dismiss the amended complaint.

**2.    Plaintiff has not Alleged a Violation of a "Right Secured by the Constitution or Laws of the United States"**

   **a.    Thirteenth Amendment**

Plaintiff first argues that because his child support obligations require him to meet a certain income threshold, he has been subjected to "involuntary servitude" in violation of the Thirteenth Amendment of the U.S. Constitution.[6] In essence, the complaint alleges that the freedom to choose where – or whether – to work is constitutionally protected,[7] and that the enforcement of the Suffolk Court judgment therefore infringes Plaintiff's rights.

Both the Ninth Circuit and the California Supreme Court have expressly rejected the contention that the enforcement of child support obligations violates the Thirteenth Amendment. In *United States v. Ballek*, 170 F.3d 871, 874 (9th Cir. 1999), the Ninth Circuit held that child support "fall[s] within that narrow class of obligations that may be enforced by means of imprisonment without violating the constitutional prohibition against slavery." Noting that all fifty states authorized the enforcement of child support obligations with criminal sanctions, the court found that "ensuring that persons too young to take care of themselves can count on both their parents for material support" was "one of the most important and sensitive exercises of the police power." *Id*. The court therefore affirmed a six-month jail sentence for willfully failing to pay child support.

In *Moss v. Superior Court (Ortiz)*, 17 Cal. 4th 396, 408 (Cal. 1998), the California Supreme Court also upheld a delinquent parent's jail sentence against a Thirteenth Amendment challenge. The *Moss* Court first found that "in those decisions in which a Thirteenth Amendment violation has

---

[6]    Section 1 of the Thirteenth Amendment of the U.S. Constitution provides: "Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction."

[7]    Plaintiff does not cite a particular Constitutional provision in which the alleged right to choose one's mode of employment is found. He does, however, offer a nod to the Declaration of Independence, arguing that "forcing [him] to get a job the court deems appropriate instead of…choosing to live his life as he pleases is in opposition to Life, Liberty and the Pursuit of Happiness." ECF No. 1 (Complaint) at 19.

7
Case No.: C 11-01994-LHK
ORDER GRANTING MOTION TO DISMISS AND DENYING MOTION FOR ORDERS TO STOP HARASSMENT

been found on the basis of involuntary servitude, the court has equated the employment condition to peonage under which a person is bound to the service of a particular employer or master until an obligation to that person is satisfied." *Id.* The Court reasoned that although child support obligations may require a non-custodial parent to seek and accept employment, they do not "bind the parent to any particular employer or form of employment or otherwise affect the freedom of the parent. The parent is free to elect the type of employment and the employer, subject only to an expectation that to the extent necessary to meet the familial support obligation, the employment will be commensurate with the education, training, and abilities of the parent." *Id.*

Dismissing *Moss* as "political opinion, not a legal position," Complaint at 9, Plaintiff urges the Court to rely instead on *United States v. Mussry*, 726 F.2d 1448, 1453-54 (9th Cir. 1984). In *Mussry*, the Ninth Circuit held that employers who hired Indonesian servants, retained their passports and airline tickets, and forced them to work fifteen hours a day had imposed a condition of "involuntary servitude."[8] *Mussry* is inapposite here because it clearly contemplates a situation in which an individual is forced to work for a specific employer. *See id.* at 1453 ("Involuntary servitude occurs when an individual coerces another *into his service* by improper or wrongful conduct that is intended to cause, and does cause, the other person to believe that he or she has no alternative but to perform the labor.") (emphasis added).[9] While being required to meet an income threshold may limit Plaintiff's options, Defendant does not mandate where – or whether – Plaintiff works, so long as he makes enough money to support his daughter. *Mussry* is also distinguishable because the defendants there advanced no legitimate interest in the coercive employment

---

[8] The *Mussry* Court construed 18 U.S.C. § 1584, which imposes criminal penalties for the imposition of a condition of "involuntary servitude."

[9] *Mussry*'s holding was later abrogated by *United States v. Kozminski*, 487 U.S. 931, 952 (1988), which limited the scope of the term "involuntary servitude" under 18 U.S.C. § 1584. Like *Mussry*, *Kozminski*'s holding assumes the victim is coerced into working for the defendant. *See id.* (A condition of involuntary servitude is imposed where "the victim is forced to work *for the defendant* by the use or threat of physical restraint or physical injury, or by the use or threat of coercion through law or the legal process.") (emphasis added).

arrangement with their servants. On the other hand, the support of minor children is "a matter of vital importance to the community." *Ballek*, 170 F.3d at 874. Thus, even if the right to choose one's manner of employment were enshrined in the Constitution, its restriction would be justified by the state's substantial interest in enforcing child support obligations.

Given the clear precedent rejecting the argument that child support violates the Thirteenth Amendment, the Court GRANTS the motion to dismiss Plaintiff's claim that Defendant has subjected him to a condition of "involuntary servitude" WITHOUT LEAVE TO AMEND.

### b. Right to Travel

The constitutional right to travel "protects the right of a citizen of one State to enter and to leave another State, the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second State, and, for those travelers who elect to become permanent residents, the right to be treated like other citizens in that State." *Saenz v. Roe*, 526 U.S. 489, 500 (1999). A state law implicates the right to travel when it actually deters interstate travel, when impeding travel is its primary objective, or when it uses a classification that serves to penalize the exercise of the right. *Attorney General of New York v. Soto-Lopez*, 476 U.S. 898, 903 (1986). Where an ordinance burdens the right to travel, it is subject to strict scrutiny. *See League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 534 (6th Cir. 2007) (state law requiring the issuance of driving certificates instead of licenses to temporary resident aliens was subject to rational basis review because it was not intended to impede travel).

#### i. Suspension of Plaintiff's Driver's License Does not Violate the Constitutional Right to Travel

Here, Plaintiff appears to contend that Cal. Fam. Code § 17520, which requires the DMV to withhold a delinquent parent's driver's license, impermissibly burdens the right to travel.[10] While

---

[10] It appears from the complaint that Plaintiff has not yet had his driver's license or passport withheld. As such, his claim may not be ripe for adjudication. *See Texas v. United States*, 523 U.S. 296, 300 (1998) ("A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all."). However, as Defendant does not address the ripeness issue, the Court declines to consider it here.

9
Case No.: C 11-01994-LHK
ORDER GRANTING MOTION TO DISMISS AND DENYING MOTION FOR ORDERS TO STOP HARASSMENT

the Court can locate no cases considering the constitutionality of Cal. Fam. Code § 17520, the California Court of Appeal has upheld an analogous statute against a similar attack. *See Tolces v. Trask*, 76 Cal. App. 4th 285, 289 (Cal. Ct. App. 1999). The *Tolces* Court found that the "right of an individual to operate a private automobile cannot be equated with the fundamental constitutional right of an individual to travel." As the court reasoned, because a parent with a suspended license "can still travel as a passenger in a car, bus, or plane," the ordinance did not trigger strict scrutiny. *Id.*; *see also Ross v. Gunaris*, 395 F. Supp. 623, 628 (D. Mass. 1975) ("Section 22A's sanction limits only one means of transportation— a car operated by the particular individual. The right to travel does not require the state to avoid any regulation of methods of transportation if it would have some minimal effect on interstate travel."); *King v. Meese*, 43 Cal. 3d 1217, 1228 (Cal. 1987) ("It is well established in California that the privileges conferred by a driver's license constitute an important property right, although not so fundamental a right as to trigger a strict scrutiny analysis.") (internal citations omitted).

The Court agrees that because it forecloses only one mode of transportation, the suspension of a driver's license does not infringe the fundamental right to travel. Enforcement of Section 17520 is thus constitutional so long as the statute bears a "reasonable relationship to a legitimate governmental interest." *United States v. LeMay*, 260 F.3d 1018, 1031 (9th Cir. 2001). As discussed above, the state's interest in enforcing child support obligations is of "vital importance." *Ballek*, 170 F.3d at 874. Section 17520 is obviously intended to further that interest; the statute applies only where a parent fails to comply with his or her child support obligations, and DCSS must "immediately" send a release to the DMV when the parent is "found to be in compliance or negotiates an agreement with the local child support agency for a payment schedule on arrearages or reimbursement." Cal. Fam. Code § 17520(h)(1).

The Court is doubtful that Plaintiff could allege facts sufficient to state a constitutional claim under Section 17520. However, while the Court finds the reasoning of those cases upholding the suspension of a driver's license highly persuasive, there is no controlling precedent determining that such conduct *could not* violate the right to travel. Given that Plaintiff is self-represented and

10
Case No.: C 11-01994-LHK
ORDER GRANTING MOTION TO DISMISS AND DENYING MOTION FOR ORDERS TO STOP HARASSMENT

alleging civil rights violations, the Court GRANTS the motion to dismiss Plaintiff's claim under Section 17520 WITH LEAVE TO AMEND.

### ii. Revocation of Plaintiff's Passport Does not Violate the Constitutional Right to Travel

The Ninth Circuit has held that revocation of a delinquent parent's passport under 42 U.S.C. § 652(k) does not offend the Constitution. *See Eunique v. Powell*, 302 F.3d 971 (9th Cir. 2002). The court first noted that "international travel…is subject to reasonable government regulation within the bounds of due process." *Id.* at 974. Given the widespread recognition that the failure to provide for children is "a serious offense against morals and welfare" and a burden to the "public fisc," the court concluded that 42 U.S.C. § 652(k) "passes rational basis review with flying colors." *Id.* at 975. Because the Court of Appeal has explicitly found 42 U.S.C. § 652(k) to be constitutional, the Court GRANTS the motion to dismiss Plaintiff's claim that revocation of his passport violates his fundamental right to travel WITHOUT LEAVE TO AMEND.

**B.** **Plaintiff has Failed to State a Claim for Intentional Infliction of Emotional Distress**

### 1. Plaintiff has not Complied with the Tort Claims Act

Under the California Tort Claims Act, a plaintiff may not sue a public entity for damages until (1) he has lodged a complaint with the entity, and (2) his claim has been rejected. *Nguyen v. Los Angeles County Harbor/UCLA Med. Ctr.*, 8 Cal. App. 4th 729, 732 (Cal. Ct. App. 1992) (citing Cal. Gov. Code, § 905; § 945.4). The purpose of the claim requirement is to enable the government body to investigate and evaluate the merits of claims, assess liability, and, where appropriate, to settle claims without the expense of litigation. *Id*. The Tort Claims Act applies to claims for infliction of emotional distress. *See Loehr v. Ventura County Cmty. Coll. Dist*., 147 Cal. App. 3d 1071, 1081 (Cal. Ct. App. 1983) ("Plaintiff's first three causes of action, ostensibly sounding in contract, seek monetary recovery for emotional and mental distress, pain and suffering, humiliation, and damage to reputation. Such actions obviously fall within the terms of the Tort Claims Act.").

Plaintiff's claim for intentional infliction of emotional distress appears to relate to allegations that Defendant and "Melissa A. Popps" harassed and intimidated him by sending monthly notices "demanding" payment of child support. Complaint at 5. However, because Plaintiff does not assert that he filed a complaint with Defendant regarding his alleged harassment before suing in federal court, his state tort claims must be dismissed.

### 2. Plaintiff has Failed to State a Statutory Basis for his Tort Claims

California law insulates public entities from liability for injuries arising out of "an act or omission of the public entity or a public employee or any other person" except as provided by statute. Cal. Gov. Code § 815(a). As the California Court of Appeal has explained, "in California, the tort liability of a public entity is wholly statutory." *Tolan v. State of California ex rel. Dept. of Transp.*, 100 Cal. App. 3d 980, 983 (Cal. Ct. App. 1979). Therefore, in order to state a claim for intentional infliction of emotional distress against Defendant, Plaintiff must rely on a specific statute authorizing such a claim. *Cf. Dina v. People ex rel. Dept. of Transp.*, 151 Cal. App. 4th 1029, 1053 (Cal. Ct. App. 2007) ("Because the Department is a public entity, any claim of negligence against it must be based on a statute.").

Plaintiff's complaint does not refer to any California statute, let alone one giving rise to a claim for intentional infliction of emotional distress. His claim is thus barred under Cal. Gov. Code § 815.

### 3. Plaintiff has Failed to Allege Facts Sufficient to Establish a Claim for Intentional Infliction of Emotional Distress

A claim for intentional infliction of emotional distress must allege: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Davidson v. City of Westminster*, 32 Cal. 3d 197, 209 (Cal. 1982) (internal citations omitted). To be actionable, the defendant's conduct must be "so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Id.*

Plaintiff has not shown that Defendant's conduct was "extreme and outrageous," nor that it was intended to cause emotional distress. *Id*. While the complaint states that Defendant "did knowingly and willfully harass" Plaintiff, the only facts alleged are that Defendant "made contact with [Plaintiff] several times…demanding money for a payment of a debt or obligation." Complaint at 5. Similarly, Plaintiff's allegation that Defendant "conspired" with the DMV and State Department is unsupported by any facts at all. Plaintiff cannot state a claim simply by relying on conclusory legal terms; he must "allege with at least some degree of particularity overt acts which defendants engaged in that support [his] claim." *Gray v. Hernandez*, 651 F. Supp. 2d 1167, 1183 (S.D. Cal. 2009) (citing *Jones v. Community Redevelopment Agency*, 733 F.2d 646, 649 (9th Cir.1984). Furthermore, insofar as Plaintiff's claims are based on Defendant's compliance with its legal obligation to enforce outstanding child support awards, such conduct can hardly be considered extreme and outrageous.

Because there may be a set of facts under which Defendant could be held liable for the intentional infliction of emotional distress, the Court GRANTS the motion to dismiss Plaintiff's state tort claim WITH LEAVE TO AMEND.[11] If he chooses to amend, Plaintiff must rely on a specific statute authorizing his claim. He must also allege *facts* showing that he complied with the Tort Claims Act and that Defendant's methods of enforcing child support obligations were

---

[11] Defendant argues it is absolutely immune from suit because Cal. Gov. Code § 821.6 insulates public employees from liability related to "instituting or prosecuting any judicial or administrative proceeding." However, the cases relied upon by Defendant are inapposite in that they involve the collection or imposition of child support payments by district attorney's offices. *See Jager v. County of Alameda*, 8 Cal. App. 4th 294 (Cal. Ct. App. 1992); *Kaplan v. LaBarbera*, 58 Cal. App. 4th 175 (Cal. Ct. App. 1997). In contrast, Defendant here did not "institute" or "prosecute" child support proceedings, it simply attempted to enforce the child support award imposed by the Suffolk Court.

Defendant also suggests it is protected under a provision immunizing public entities for injuries based on an employee's "exercise of discretion." Cal. Gov. Code § 802.2. "Not all acts requiring a public employee to choose among alternatives entail the use of 'discretion' within the meaning of section 820.2." *Barner v. Leeds*, 24 Cal.4th 676, 684–85 (Cal. 2000). "Immunity applies only to deliberate and considered policy decisions, in which a conscious balancing of risks and advantages ... took place." *Caldwell v. Montoya*, 10 Cal. 4th 972, 981(Cal. 1995). If proven, the choice by Defendant's employee to "harass" Plaintiff would not be a "considered policy decision" subject to immunity.

"extreme and outrageous." Of course, if the Court finds that Plaintiff's factual allegations do not have evidentiary support, Plaintiff may be subject to sanctions. *See* Fed. R. Civ. P. 11.

### C. Plaintiff's Other Claims Are Dismissed Without Leave to Amend

In California, a punitive damages award may not be assessed against a public entity. *See* Cal. Gov. Code § 818. Plaintiff's prayer for punitive damages against Defendant is thus foreclosed.

Plaintiff also appears to allege violations of 18 U.S.C. § 1581, 18 U.S.C. § 1584, and 18 U.S.C. § 241, which authorize criminal penalties for imposing a condition of peonage, sale into involuntary servitude, and conspiring to violate civil rights, respectively. None of the cited statutes contains a private cause of action. *See also Del Elmer v. Metzger*, 967 F.Supp. 398, 403 (S.D.Cal.1997) ("Civil causes of action ... do not generally lie under the criminal statutes contained in Title 18 of the United States Code."). Therefore, an individual plaintiff may not invoke these provisions in a civil suit; only the Government may institute such a prosecution.

As Plaintiff's claims for punitive damages and under Title 18's criminal statutes are barred as a matter of law, any amendment would be futile. The Court therefore GRANTS the motion to dismiss these claims WITHOUT LEAVE TO AMEND.

### D. Plaintiff's Motion for Orders to Stop Harassment is Denied

On August 15, 2011, Plaintiff filed a "Request for Orders to Stop Harassment" alleging that "Ms. Popps, along with the agency's attorney, and DMV" were threatening to suspend his driver's license if he failed to comply with his child support obligations. ECF No. 12 (Request for Orders to Stop Harassment) at 1. As Plaintiff appears to be relying on facts substantially similar to those contained in his complaint, the Court DENIES the motion for the same reasons it grants Defendant's motion to dismiss.

### IV. CONCLUSION

As discussed above, the Court is doubtful that Plaintiff can state a cause of action against Defendant. However, because he is self-represented, and there is no controlling precedent holding

14
Case No.: C 11-01994-LHK
ORDER GRANTING MOTION TO DISMISS AND DENYING MOTION FOR ORDERS TO STOP HARASSMENT

that Cal. Fam. Code § 17520 is constitutional, Plaintiff may amend his complaint under that provision. In addition, because it is conceivable that Plaintiff could state a claim for intentional infliction of emotional distress, he may amend that claim as well. Plaintiff's other claims are dismissed with prejudice.

**IT IS SO ORDERED.**

Dated: October 11, 2011

_____
LUCY H. KOH
United States District Judge